**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Md Shakhawat Hossain, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART PLAINTIFF'S** |
| vs. | ) | **MOTION FOR SUBPOENAS DUCES** |
| | ) | **TECUM** |
| Job Service North Dakota, | ) | |
| | ) | Case No. 1:20-cv-009 |
| Defendant. | ) | |

Before the court is plaintiff's motion requesting the court to authorize the issuance of subpoenas duces tecum pursuant to Fed. R. Civ. P. 45. For the reasons that follow, the motion is granted in part and denied in part.

## I.   BACKGROUND

Plaintiff initiated the above-captioned action pro se and in forma pauperis on January 27, 2020. He claims that he was subjected to a hostile work environment, retaliated against, and otherwise discriminated against on the basis of his race, color, gender, religion, and national origin during his term of employment with Defendant Job Service North Dakota ("JSND") and/or when applying for reinstatement/re-employment with JSND. (Doc. No. 4).

On October 13, 2020, plaintiff filed a motion requesting the court to authorize the issuance of subpoenas duces tecum pursuant to Fed. R. Civ. P. 45. (Doc. No. 26). What follows is a list of who and what plaintiff wants to subpoena.

•   Midco: "any and all documents they produced and received regarding plaintiff['s] internet connection and service at his address."

•   The State of North Dakota, its Bureau of Criminal Investigation ("BCI"), and its

    Attorney General: any and all information, documents, or files produced and obtained during the course of its background investigation of plaintiff; plaintiff's job application(s).

- The United States Citizenship and Immigration Services ("USCIS") and the Department of Homeland Security ("DHS"): plaintiff's "I-9 related documents and "immigration related files or documents regarding plaintiff's identity and related information" that it provided to JSND.

- The Federal Bureau of Investigations (FBI): any and all documents relating to background checks it may have run on plaintiff and shared with JSND.

- AT&T, Verizon, T-Mobile, Sprint, and other, unspecified mobile carriers: personal cell phone records of plaintiff, certain individuals employed by defendant, Anjani K. Adusummilli, and Md Alauddin Chowdhury.

- North Dakota State University ("NDSU") and the Bangladeshi community at NDSU: emails and messenger communications of Dr. Saeed Salem, an employee in NDSU's computer science department; any and all documents produced and received in connection with plaintiff by the Bangladeshi community at NDSU.

- North Dakota's Information Technology Department ("ITD"): telephone/voice call logs/electronic communications from certain individuals employed by JSND and/or by ITD.

(Id.).

## II.  APPLICABLE LAW

  Pursuant to Federal Rule of Civil Procedure 45(a)(2)(c), a subpoena may direct a non-party

to an action to produce documents or other tangible objects for inspection. "The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it." Fed. R. Civ. P. 45(a)(3); see also N.D.D. Civ. L.R. 45.1 ("The Clerk must not issue balk subpoenas to a pro se party except upon order of the court."). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

"The Court has the 'discretionary power to refuse to subpoena witnesses and to prevent abuse of its process in both civil and criminal proceedings.'" Stockdale v. Stockdale, Case No. , 2009 WL 4030758 at *1 (E.D. Mo. Nov. 18, 2009) (quoting Manning v. Lockhart, 623 F.2d 536, 539 (8th Cir.1980) (per curiam)); Jackson v. Brinker, No. IP 91–471–C, 1992 WL 404537 at * 7 (S.D. Ind. 1992) (opining that courts have the " inherent and statutory power to supervise an in forma pauperis party's litigation to the end of preventing abuse of the court's process and the privileges granted him under § 1915, and that this authority extends to screening an indigent party's requests for issuance and service of subpoena duces tecum on non-parties."); cf. Friedman v. Bank of Jackson Hole, No. 219CV01054JADDJA, 2020 WL 2996072, at *2 (D. Nev. June 4, 2020) (directing that the no further subpoenas may be issued to pro se plaintiff without the court's approval). "This power should be exercised to protect the resources of the Court and the Marshals Service, and to prevent harassment and undue expense of other parties and non-parties." Stockdale v. Stockdale, 2009 WL 4030758 at *1; see also Lynch v. Burnett, No. 18CV01677DMSJLB, 2020 WL 5517577, at *1 (S.D. Cal. Sept. 14, 2020) ("The Federal Rules of Civil Procedure were not intended to burden a

non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena....Non-parties are entitled to have the benefit of the Court's vigilance." (internal citations, quotation marks, and modifications omitted)); Heilman v. Lyons, No., 2010 WL 5168871 at *1 (E.D. Cal. Dec. 13, 2010) ("Proper reliance on a subpoena duces tecum is limited by the relevance standards set forth in Federal Rule of Civil Procedure 26(b)(1) . . . and considerations of burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1).").

### III.   DISCUSSION

#### A.   Midco

Plaintiff wants to subpoena "any and all documents [it] produced and received regarding [his] internet connection and surveillance" from Midco, his internet service provider. The court, in the exercise of its discretion, is disinclined to authorize the issuance of such a subpoena as it is hard-pressed to see how documents from plaintiff's internet service provider regarding plaintiff's internet usage are material and necessary for the prosecution of plaintiff's employment discrimination claims. Accordingly, it denies plaintiff's subpoena request as it pertains to Midco. It shall next address plaintiff's request as it pertains to BCI and the State Attorney General's office.

#### B.   BCI and State Attorney General's office

Plaintiff asks the court to authorize the issuance of a subpoena that "[directs the] Bureau of criminal justice, Attorney General, State of North Dakota to produce and provide any and all information, documents or files produced or obtained regarding plaintiff during background investigation process of plaintiff as part of hiring process at JSND and to produce and provide documents regarding Plaintiff's job application at Attorney General office, State of North Dakota for his employment application files for Programmer Analyst III position no 3012205." (Doc. 26).

As best as the court can discern from plaintiff motion, plaintiff is laboring under the belief that false and malicious information collected and then disseminated by BCI and others poisoned JSND against him and that JSND subsequently sabotaged his efforts to obtain employment with the Attorney General's office.

> Amy Shawver Morman also told plaintiff that she received several document related with plaintiff waving hands tgo NDSU or plaintiff's country of origin. Although Amy Shawver Morman saved electronic or paper documents as was provided during requestg for production of documents that document was not provided to plaintiff. During second set of discovery, plaintiff also specified any and all document not contained in personnel file of plaintiff and specified the phrase Amy Shawver Morman told to plaintiff "she received several document related with plaintiff waving hands to NDSU or plaintiff's country of origin" but that document was not provided during discovery responses. She received those document from any of the following agencies like bureau of criminal investigation, Attorney general office or FBI, USCIS, Govt. of the People's republic of Bangladesh or his communication with Saeed Salem, Md Alauddin Chowdhury and others regarding plaintiff as response to her reference check email. Those documents contained stereotypical information regarding plaintiff's prohibited protected characteristics as part of defamatory campaign against plaintiff because of differences in religious opinion and political opinion at plaitniff's country of national origin instructed by Bangladeshi people or agents located at North Dakota or united states and also shared those false information with either bureau of criminal investigation, Attorney general office, FBI or USCIC. These stereotypical false information was the root cause behind the discrimination against plaintiff and sending these home internet surveillance documents to plaintiff to keep plaintiff under surveillance for his political opinion against Pakistan by giving plaintiff an false identity or marking him as a being from terrorist organization from Bangladesh, these are not mere speculation or conjecture as similar type of questions Plaintiff was asked by USCIS agents during an immigration claim interview on or around July 11th 2018. So, information from these Bangladeshi people especially from Bangladeshi community at NDSU, as plaintiff stayed there for two years before joining Job Service North Dakota, was subsequently disseminated by them to these state and federal agencies and directly or indirectly reached to JSND and limiting plaintiffs work opportunities based on his prohibited protected characteristics and keeping Plaintiff under surveillance. Plaintiff also applied for Jobs at Attorney general office for similar positions, Programmer Analyst iii at Attorney general office position no 3012205 as part of job searching process and also mentioned Job Service North Dakota as his previous employer, Job service North Dakota's response to this application is relevant and necessary and will lead to admissible evidence regarding Job Service North Dakota's discriminatory intent regarding plaintiff's employment. Plaintiff called

5

> Attorney general office during this employment application process and he was told that he is on second position of list but was not was called for any in-person interview at this agency.

(Doc. No. 26).

At first blush it would appear that the plaintiff is already undertaken effort to obtain information regarding investigations and background checks from other sources, i.e., USCIC, DHS, and the FBI. In any event, absent a more coherent explanation as to why he needs to subpoena this information in order to prosecute his employment discrimination claims, the court is not at present inclined to indulge what has the appearance of a challenge to or collateral attack by plaintiff on his immigration status and the efficacy of any underlying investigations or background checks to which he was subjected. As for the employment application plaintiff purportedly submitted to the Attorney General's office, it is not readily apparent what purpose its production will serve in the context of the instant action. Plaintiff's request as it pertains to BCI and the Attorney General's office is therefore denied without prejudice.

### C.     USCIS, DHS, and FBI

According to plaintiff, he filed multiple Freedom of Information Act ("FOIA") requests with the USCIS and the FBI in June 2020. Although these agencies have communicated to plaintiff that they have responsive documents in their possession, they have yet to provide him with any copies. In an effort to expedite the production of these documents, plaintiff "ask[s] the court to issue subpoena these two federal agencies to produce very important documents in this case." (Doc. No. 26) (errors in original).

The court is not persuaded that it necessary at this time to issue subpoenas to plaintiff for service on USCIS, DHS, and/or the FBI. By plaintiff's own admission a FOIA request is currently

being processed. Notably, there is nothing in plaintiff's motion to suggest that USCIC, DHS, or the FBI are unwilling or unable to produce the responsive documents. Plaintiff's frustration or dissatisfaction with their pace in producing these documents does not necessitate the issuance of subpoenas, particularly given the posture of this case. The deadline for completing discovery is, after all, more than four months away. Plaintiff's request as it pertains to USCIC, DHS, and the FBI is therefore denied without prejudice.

### D. AT&T, Verizon, T-Mobile, Sprint, and other, unspecified mobile carriers

Plaintiff next wants to subpoena his personal cell phone records along with those of certain individuals employed by JSND and other State agencies. Specifically, he requests:

> subpoenas "directing At&t, Verizon, T-Mobile, sprint, cricket and other carriers to produce call logs of Plaintiff and several employees of [defendant], Anjani K. Adusumilli, Md. Alauddin Chowdhury on their personal devices . . . .

> Information obtained from several agencies during background check processes or from persons during reference check processes or subsequent communication via personal means through At&t, Verizon, T-mobile, Cricket, or other telecommunication carriers with outside of Job Service North Dakota employee is relevant information regarding plaintiff's background or prohibited protected characteristics and further fomented discriminatory intent inside plaintiff's supervisors, co-workers, or human resources already discriminatory believe system or mind at JSND, investigated further to create limiting employment opportunity to plaintiff and to deport plaintiff out of United States based on his prohibited protected characteristics or beliefs.

> * * *

> Electronically stored information on cellphones is subject to discovery pursuant to Federal Rule of Civil Procedure 34(a)(1)(A).
> Request for Production of documents 7: product and provide text messages and phone call sent or made from or received by Amy Shawver, Jason Sutheimer, Connie Johnson, Pat C Kelly, Mathwich Tyler, Jessica Rossow, Md. Alauddin Chowdhurry, ITD Mr. Anjani K. K. Adusumilli using their personal cellular or wired phone number but used for discussing following related topics: plaintiff's employment, I-9 and extension, marriage, race, color, religion, national origin, lawful activity outside of workplace, etc.

(Doc. No. 26).

First, it is unclear why plaintiff needs to subpoena his own cell phone records. Second, the sheer breadth of the records that plaintiff wants to subpoena lends his request an air of frivolity as do the sheer number of individuals and/or entities on whom he wants to serve subpoenas. Third, the breadth and vagueness of plaintiff requests begs the question whether compliance with all of his requests would be unduly burdensome let alone produce information that is material and necessary. It is not readily apparent, for example, how call logs from the personal devices of non-parties is likely to be assistance to plaintiff as they would provide no information in regards to the substance of any calls. Fourth, the court cannot ascertain from plaintiff's motion his ability to tender any fees that may be required for the subpoenas. Consequently, the court inclined to deny this request for subpoenas without prejudice. The court will next address plaintiff's request as it pertains to NDSU and Dr. Salem.

### E. NDSU and Dr. Saeed Salem

In response to plaintiff's discovery requests JSND produced, among other things, a document on which Amy Shawver-Morman, plaintiff's former supervisor at JSND, noted that she had emailed Dr. Saeed Salem, an NDSU employee. However, it was unable to provide plaintiff with a copy of Ms. Shawver-Morman's email correspondence with Dr. Salem, explaining that said correspondence may have been purged/deleted in the normal course pursuant to agency policy. Plaintiff now wants to subpoena this communication from NDSU and/or Dr. Salem.

The court is not presently inclined to issue a subpoena for service on NDSU or Dr. Salem because: (1) it is not entirely clear how this communication is material; and (2) there is nothing in plaintiff's motion to suggest that he has no other means of obtaining it.

Discovery attached to a motion for a status conference filed by plaintiff on October 13, 2020, indicates that Dr. Salem was contacted by Ms. Shawver-Morman because he had been listed on plaintiff's employment application as a reference.

> **Interrogatories No. 1:** Please discuss details of all pre-employment inquiries that was made by any employee/agent of Job Service before the offer letter was provided to complainant.
> **Details of this question**: Amy Shawver Morman, Job service North Dakota made a phone call to Complaint before complainant received offer letter from Job service North Dakota on the same day. Please state in details the purpose of that call, communication during that call, other similar preemployment inquiries was made by any other agent of Job service North Dakota from any other sources (identify those sources) and that information was used in employment decision making process by Amy Shawver Morman or if a group was involved with her. Complaintant also provided a list of references and provide details from those references. Please also included details from those sources)
> **Answer to Interrogatories No. 1:** Defendant JSND objects to this interrogatory as it contains an unrelated subjpart requesting information with respect to a list of references which is unrelated to Interrogatory No. 1. Defendant JSND further objects to the use of "all", "any other agent", and "any other sources" as vague, unintelligible
> Subject, and without waiving its foregoing objections, Defendant JSND answers that Amy Shawver-Morman contacted Hossain to obtain references as Hossain did not provide them in his application materials. After Hossain provided the requested information to Ms. Shawver-Morman, she contacted Vasant Ubhaya, Dr. Saeed Salem, and Kayli Harlan regarding a reference check for complainant. Hossain's references all provided positive references for Hossain. Therefore, Defendant JSND hired Hossain for the Subject Position with Defendant JDSND. See JSND-316-403.

(Doc. No. 27-2).

The fact that Dr. Salem was used by plaintiff as a reference suggests that the two are well-acquainted and on good terms. Thus, it seems reasonable to conclude that Dr. Salem would be predisposed to voluntarily provide the email communications or otherwise disclose the substance of his conversation with Ms. Shawver-Morman to plaintiff if asked. This in turn begs two questions–has plaintiff approached Dr. Salem to inquire whether he would voluntarily produce any

record of his communication with Ms. Shawver-Morman and if not why not. Absent answers to these question and an explanation from plaintiff why he believes correspondence from his reference is material and necessary to prosecute his claims of employment discrimination against JSND, his request to subpoena NDSU and/or Dr. Salem is denied without prejudice. The court shall next address plaintiff's subpoena request as it pertains to the Bangladeshi community at NDSU.

###        F.        The Bangladeshi Community at NDSU

It appears that plaintiff wants to serve subpoenas on the Bangladeshi community at NDSU. Specifically, he requests the issuance of subpoenas "directing Bangladeshi community at NDSU or any of its members to produce and provide all documents produced and received in connection with plaintiff." (Doc. No. 26).

The scope and vagaries of plaintiff's request render it frivolous. Plaintiff has not provided any names or addresses of persons in the Bangladeshi community each subpoena will be directed, clearly articulated the purpose for these subpoenas, demonstrated the wherewithal to conduct any proceeding for which the subpoenas might be issued, or demonstrated an ability to tender any witness and other fees that may be required for the subpoenas. His request to subpoena the Bangladeshi community is therefore denied. The court shall next address plaintiff's request as it pertains to ITD.

###        G.        ITD

Plaintiff served discovery requests on JSND, seeking, among other things, production of electronic communications (read: emails, instant messages, etc.) of certain JSND employees along with the electronic communications between certain JSND employees and Md Alauddin Chowdhury, an employee of ITD. JSND appears to have responded that it was unable to produce

all of the communications that plaintiff had requested as they had been "purged" in the normal course or were not in their custody and control. Presumably operating under the belief that the communication he seeks are archived or otherwise in the care and custody of ITD, he wants to serve ITD with a subpoena commanding their production. He asserts:

> Plaintiff served two sets of discovery requests to the defendant JSND in this case asking to provide several documents and interrogatories. After getting responses from JSND, plaintiff learned that his email, messenger communications records have been purged and Some existing employees at JSND selectively deleted several of the email communications regarding plaintiff's employment at JSND. Md Alauddin Chowdhury communicated with plaitiff on plaintiff's official messenger with some stereotypical or harassing intent and he also communicated with Pat. C. Kelly, an employee at JSDC and also other employees at JSND via telephone, emails and messenger communications and Pat. C. Kelly told plaitiff to connect with Md Alauddin Chowdhury, communicating with other co-workers at JSND regarding plaintiff's protected characteristics related information with discriminatory intent. As plaitiff records were purged plaintiff seek subpoena to obtain Md Alauddin Chowdhurry's email communication to recover some of the lost email communications. During discovery document production process, plaintiff asked defendant to produce Md Alauddin Chowdhurry's email communications. But those documents were not provided as he was not an employee of Job Service North Dakota.

(Doc. No. 26) (errors in original).

The court cannot reject out of hand plaintiff's request as it pertains to ITD. Consequently, the court shall grant in part plaintiff's request for the issuance of a subpoena for service on ITD.

### III.  CONCLUSION

Plaintiff's motion (Doc. No. 26) is **GRANTED IN PART AND DENIED IN PART**. The Clerk shall forward to plaintiff a blank subpoena form for production of documents from ITD. Plaintiff can then complete the forms by inserting the information required. Before plaintiff can use the form, he must submit them to the Clerk for signing. If the form is properly completed and otherwise appears to be in order, the Clerk may then sign the subpoena form and return it to plaintiff,

who shall be responsible effectuating service of it.

**IT IS SO ORDERED.**

Dated this 20th day of November, 2020.

>*/s/ Clare R. Hochhalter*
>Clare R. Hochhalter, Magistrate Judge
>United States District Court